RAFAEL BIANCHI MARTÍNEZ ROSAFÁ, Plaintiff and Appellee, *v.* HEIRS OF FRANCISCO BIANCHI ROSAFÁ, Defendants and Appellants.

No. 9365.—Argued May 5, 1947.—Decided July 11, 1947.

558

Oscar Souffront and José Sabater García for appellants. Francisco Vizcarrondo and Rafael Rivera Zayas for appellee.

Mr. Justice Marrero delivered the opinion of the Court.

In the amended complaint filed in this case it is alleged, in substance, that the predecessor in interest of the defendant heirs, Francisco Bianchi Rosafá, died on April 12, 1945; that the plaintiff is an acknowledged natural child of said predecessor in interest and was born as the result of the sexual relations between the latter and plaintiff's mother Carmen Tomasa Martínez Rovira, both his parents being single at that time, and there being no impediment to their contracting marriage at the time of his conception and birth, which took place on May 13, 1912; that Alfonsia Courtier, in her capacity as midwife, assisted the mother of the plaintiff at the request of his father Francisco Bianchi Rosafá, who paid said midwife for the services rendered by her; that Francisco Bianchi Rosafá always recognized the plaintiff as his natural son and accorded to him privately and publicly, the intimate and manifest treatment of an acknowledged natural child; that when plaintiff was six years old, he and his mother moved to the city of Ponce, where she continued to receive financial assistance from Francisco Bianchi Rosafá for the support of the plaintiff, and that Bianchi Rosafá continued this practice until the year 1923, when plaintiff's mother died; that after his mother died plaintiff moved to the home of his uncle Darío Rovira, in San Juan, and during

that time he continued to receive financial aid from his father, personally and by mail; that upon the death of his uncle Darío Rovira in 1929, the plaintiff requested formal acknowledgment by his father, but that the latter always answered that he would acknowledge him at the opportune time; that the relatives of Bianchi Rosafá are aware that the plaintiff is an acknowledged natural son of that gentleman, the formal acknowledgment not having been carried out due to the firm resolution of his father to do it at the opportune time; that due to the affection and respect in which the plaintiff had always held his father, he, at all times, relied on the statements of the latter, but that since his father died without having complied with his offer, he has been forced to claim the right belonging to him.

The defendants María Bianchi Suárez, Jaime Bianchi López, and Luis Guasp Bianchi answered the complaint and denied the essential averments thereof. The remaining defendants are in default.

The issue having been thus joined, the case went to trial, and ample oral and documentary evidence was introduced. Afterward the lower court rendered an extensive opinion declaring the plaintiff an acknowledged natural child of Francisco Bianchi Rosafá with all the rights pertaining to that status. Feeling aggrieved by that decision, Juan Bianchi López and Luis Guasp Bianchi have appealed to this Court.

In support of their appeal they have assigned four errors, to wit: (1) that the lower court erred in holding that Francisco Bianchi Rosafá lived in concubinage with plaintiff's mother; (2) in declaring that the plaintiff has been in the uninterrupted possession of the status of a natural child of Francisco Bianchi Rosafá; (3) in rejecting and ignoring the allegation of the defendants-appellants that since the plaintiff took steps through his friends Pedro Blanch and Waldemar Bithorn to obtain his acknowledgment as a child of Francisco Bianchi Rosafá, and since the latter did not include the

plaintiff as a son and heir in his will, there arose a question of law, consisting in that the decedent expressly and by means of a privileged (*sic*) document, denied his acknowledgment to the plaintiff, the oral testimony regarding such acknowledgment, which was the only evidence introduced on this point, being thus discredited; and (4) that the oral testimony introduced by the plaintiff did not establish either the concubinage or the uninterrupted status of an acknowledged natural son, and therefore the court *a quo* committed manifest error in the weighing of that evidence, and its conclusions of law are not only not supported by the evidence but are against the weight thereof.

 Since the errors numbered 1, 2, and 4 relate to the weighing of the evidence by the lower court, it is necessary to make the following summary thereof:

*Rafael Bianchi Martínez* is the plaintiff herein and was born on May 13, 1912, in Mayagüez, Carmen Tomasa Martínez being his mother. He remembers that Francisco Bianchi Rosafá visited his mother from time to time and treated him "as my father, since he was my father." He called him "Rafaelito my son" and he called Bianchi Rosafá "father." After he moved to Ponce with his mother, Bianchi Rosafá visited her and treated him as his child. He always called Bianchi "father." While his mother lived in Ponce his father supported her and after her death, plaintiff came to live to San Juan with his uncle Darío Rovira, until the latter died in 1929. After the death of his uncle, he had occasion to see his father in San Juan and when he called on him in San Juan, Bianchi Rosafá used to give him $25 or $50. He always helped the plaintiff and treated him as his father, since he was such, "with much affection and as if I were his son." The plaintiff went on various occasions to Mayagüez and he always stayed in the home of his brother Juan Bianchi Ramos. In Mayagüez he was introduced by Bianchi

Ramos to other children of Bianchi Rosafá. When introducing him Bianchi Ramos always said "this is a brother of ours."

*José Antonio Fábregas* was an employee of Francisco Bianchi Rosafá for 27 years and a man whom he fully trusted. He remembers that the plaintiff wrote requesting help and he sent to him $50 by order of Mr. Bianchi Rosafá. In his letters the plaintiff alleged that he was a son of Don Francisco, and when the witness read the letters to the latter —Bianchi was almost blind—he would remark "leave that matter for later." His impression is that "Martínez Rovira" is a son of Bianchi Rosafá. Bianchi did not state that the plaintiff was his son; he did not admit it, but he did not deny it, either.

*Pedro Blanch* testified that he and Francisco Bianchi Rosafá were intimate friends and that he knew Carmen Tomasa Martínez since he was a child; that Bianchi Rosafá and Carmen Tomasa were sweethearts and afterwards cohabited in No. 2 Liceo Street, Mayagüez; that their love affair started in 1911; that Don Paco—referring to Bianchi Rosafá—visited her frequently and that on various occasions he found him visiting there; that Carmencita, who was at that time fourteen or fifteen years of age was the mistress of Don Paco and that when she gave birth she was assisted by a midwife called Alfonsia Courtier; that he saw when Bianchi gave an envelope to said midwife but that he did not know what it contained; that Carmencita continued to be the mistress of Don Paco, while he lived in Mayagüez, and that he moved to San Juan in 1913; that Carmencita had a child and Don Paco called him his son; that while he was in San Juan the minor was introduced to him by Darío Rovira and that he recognized him by a birthmark that plaintiff has; that on one occasion he went with Darío to the Palace Hotel in order to see Don Paco Bianchi regarding the acknowledgment of the child and Don Paco answered "I will fix that

matter at the opportune time''; that Bianchi always treated the child as if he were his son and on two occasions sent him $50 with the witness; that it was evident to him that while he lived in Mayagüez Bianchi Rosafá always slept in Mango's house located in Méndez Vigo Street; and that he always went to sleep to said house between 10:30 and 11:00 p.m.

*Waldemar Bithorn Huicy* also knew Francisco Bianchi Rosafá intimately since the year 1908. From 1910 to 1912 he knew Carmen Tomasa Martínez, at No. 2 Liceo Street, Mayagüez. He knew that Bianchi visited Carmen Tomasa. At times he and Bianchi came from Añasco to Mayagüez, visited Carmen, and he then left Bianchi alone in the house with her. Bianchi Rosafá told him ''now I have a child'' and when the witness asked him by whom, he answered: ''by Carmen Tomasa.'' After the birth of the child Bianchi continued visiting Carmen Tomasa. The boy was called Rafael, and Bianchi visited the mother of the former as her lover during the years 1910 to 1912. He saw the boy again in San Juan, since Darío Rovira took the boy to him in order that he might see the child. The plaintiff and Don Francisco Bianchi treated each other as father and son. Rafael called Don Paco, father, and the latter treated the plaintiff as his son.

*Armando Rodríguez* knew Francisco Bianchi Rosafá intimately and also the plaintiff. Later he moved to Ponce and while he was a penal guard there on several occasions he saw Don Francisco Bianchi Rosafá visit Carmen Tomasa, to whom the witness had rented a room.

*Amparo Bianchi* knew Francisco Bianchi Rosafá, as he was her grandfather and godparent; and also the plaintiff who is her uncle, a brother of her father. She met the plaintiff in her own house, since her father brought him there. Rafael Bianchi Martínez came to Mayagüez to ask help from her grandfather Francisco Bianchi Rosafá and on these occasions her father took him to her house and he stayed

there. Her father treated the plaintiff as his brother. Once he introduced him to her uncle Manuel and to her aunt Carmela.

*Raúl Bianchi* testified similarly as the preceding witness.

With that evidence before it, we repeat, the District Court of Mayagüez declared the plaintiff an acknowledged natural child of Don Francisco Bianchi Rosafá. It considered that there had been established not only the concubinage between plaintiff's mother and the predecessor of the defendant heirs, but also the possession of the status claimed by the plaintiff. If the summary of the evidence which we have made above is examined, it will be seen that the witnesses agree that Carmen Tomasa Martínez and Francisco Bianchi Rosafá, both being single, had sexual relations for several years. However, the evidence does not show that Bianchi Rosafá had Carmen Tomasa as his concubine but rather as his mistress or lover. As we said in *Medina* v. *Heirs of Bird et al.*, 30 P.R.R. 151, 154, "The concubinage to which the Civil Code has reference relates to a state of living together similarly to husband and wife without being actually married. It is not sufficient that a man installs a woman in a house and frequently visits her, especially if he has an independent home of his own . . ." [1] In the present case the evidence fails to show that Bianchi Rosafá and the mother of the plaintiff lived as husband and wife without being actually married. It was merely shown that the predecessor of the defendant heirs visited the mother of the plaintiff with some frequency [2] and that as a result of the lover affair between them, the plaintiff herein was born. We believe therefore, that the lower court erred in stating in its opinion that the concubinage between the mother of the plaintiff and the

---

[1] Cf. *Ortiz* v. *Dragoni*, 59 P.R.R. 14, 18; *Carradero* v. *Lebrón*, 58 P.R.R. 137; *Estela* v. *Heirs of Medraño*, 51 P.R.R. 531; *Góñez* v. *Palmieri*, 50 P.R.R. 439, and *Colón* v. *Heirs of Tristani*, 44 P.R.R. 163, 201.

[2] *González* v. *Heirs of Sánchez*, 40 P.R.R. 146, 148 and *Gerena* v. *Suau*, 36 P.R.R. 151.

predecessor of the defendant heirs had been established. The appeal, however, is taken from the judgment and not from the reasoning or grounds of the opinion,[3] and the judgment rendered herein can be upheld on other grounds.

■ From a further examination of the evidence, the conclusion must be reached that the uninterrupted possession of the status of a natural son of the predecessor of the defendant heirs, justified by acts of said predecessor or his family, was duly established. Subdivision 2, § 125 of the Civil Code, 1930 ed. There is evidence of the illicit relations between the mother of the plaintiff and the predecessor in interest of the defendants, and of the numerous occasions on which Francisco Bianchi Rosafá acknowledged the paternity of the plaintiff, calling him his son, treating him as such, making him presents, etc. As we said in *Colón* v. *Heirs of Tristani,* 44 P.R.R. 163, 174:

"In our opinion, the word *'continuo'* (uninterrupted) should be taken to mean a series of acts, a set of facts carried out by the person from whom the acknowledgment is claimed, sufficient, if considered as a whole, to constitute the uninterrupted condition of a natural child. Once these series of acts have been carried out for a reasonable length of time, the father should not be allowed to revoke with his subsequent acts the acknowledgment priorly made by him. To establish a contrary principle would be equivalent to authorize the father to set aside certain facts which should have been insufficient for the child to obtain his acknowledgment, if the action had been brought prior to the date in which the relations existing between them had been interrupted."

We think that the possession of the status was established and, therefore, the second and fourth errors assigned are nonexistent.[4]

■ The third assignment of error does not merit serious consideration. It should be borne in mind that said assignment refers to the fact that because the decedent failed to

---

[3] *Escudero* v. *Mulero,* 63 P.R.R. 551, 565 and *Cruz* v. *Carrasquillo,* 61 P.R.R. 422.

[4] Cf. *Cruz* v. *Carrasquillo,* 61 P.R.R. 422; *Torres* v. *Heirs of Caballero,* 39 P.R.R. 654, and *Fontánez* v. *Heirs of Buxó,* 36 P.R.R. 202.

·designate the plaintiff as son and heir in his will, a question of law was raised consisting in that the decedent in an express manner and by means of a formal document, denied his acknowledgment to the plaintiff, the oral evidence regarding such acknowledgment being thus discredited. It is precisely because the plaintiff has not been acknowledged that he has been compelled to bring the action herein. It is not unusual that notwithstanding the acts of a father showing the possession of the status of a natural son or any other form of acknowledgment, he may subsequently deny such acknowledgment or fail to include his son as such in his will. At times even legitimate children are omitted.[5] As we said in *Colón v. Heirs of Tristani, supra,* at p. 168, citing Scaevola, at p. 350 of volume 1 of his *"Jurisprudencia del Código Civil,"* it is a frequent fact that persons contrary to the natural law, oblivious of blood ties, underrate the beautiful title of father and forget the duties inherent to paternity. Moreover, as stated by this Court speaking through Mr. Chief Justice Del Toro in *Vázquez v. Boyrié,* 52 P.R.R. 826, 835 "The failure of the parent to recognize his children in writing before his death does not destroy his prior acts." Those words are wholly applicable to the case at bar. The error under discussion has not been committed.

The judgment appealed from should be affirmed.

---

[5] See § 742 of the Civil Code, 1930 ed.